## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES SMITH, | No. 4:18-CV-01134 |
| Plaintiff, | (Judge Brann) |
| v. | |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

### MARCH 16, 2020

Plaintiff James Smith, a prisoner presently confined at the State Correctional Institution at Waymart in Waymart, Pennsylvania, filed an amended complaint pursuant to 42 U.S.C. §§ 1983 and 1985, and the Americans with Disabilities Act regarding Defendants' alleged failure to make a reasonable accommodation for him to participate in a mandatory sex offender training program. Plaintiff also alleges that Defendants acted discriminatorily and denied him due process in refusing to allow him to participate in the training.[1] Presently before the Court is Defendants' motion to dismiss, which is now ripe for disposition.[2] For the reasons that follow, the Court will grant in part the motion to dismiss.

---

[1] ECF No. 29.
[2] ECF No. 38.

# I.    BACKGROUND

Plaintiff James Smith, a state prisoner presently confined at the State Correctional Institution at Waymart and previously incarcerated at the State Correctional Institution at Mahanoy seeks to bring this putative class action on behalf of himself and other similarly situated inmates who were prevented from being program compliant prior to the expiration of their minimum sentence term through the deliberate indifference, discrimination, and retaliation of prison staff.[3] Further, Plaintiff alleges that such actions of prison staff violate the Americans with Disabilities Act and the Civil Rights Conspiracy Claims Act.[4] Specifically, Plaintiff alleges that sex offender inmates, who are required to complete sex offender programming prior to being considered for parole at the end of their minimum sentence term and who are housed in the infirmary housing unit or a personal care unit, are prevented by prison staff from timely completely this required programming due to their housing status.[5] This, in effect, precludes Plaintiff and others allegedly similarly situated from being considered for parole at the end of their minimum sentence term, and they are then forced to remain incarcerated for, in at least one instance, over a year past the first date on which they could have been paroled.

---

[3]    ECF No. 29 at 2, 3.
[4]    *Id.* at 2.
[5]    *Id.* at 3-4.

Plaintiff alleges that prison staff must reasonably accommodate these prisoners even though they are housed in the infirmary or a personal care unit, so that they may timely complete their required sex offender programming. The allegations relevant to Plaintiff's individual circumstances are as follows.

On November 14, 2014, Plaintiff pled guilty to involuntary deviate sexual intercourse, and a few days later entered into a plea agreement with the District Attorney for Delaware County.[6] Under the terms of his plea agreement, Plaintiff would be sentenced to three to six years imprisonment.[7] In evaluating whether to accept the plea agreement, Plaintiff asked his criminal defense attorney if he would be released at his minimum sentence term date of three years if he complied with all conditions of his sentence and behaved well.[8] His attorney responded in the affirmative, and Plaintiff accepted the terms of the plea agreement.[9] On March 3, 2015, Plaintiff was sentenced to the agreed upon three to six years' imprisonment.[10] His minimum sentence term date was calculated by Defendant Pennsylvania Department of Corrections ("DOC") to be August 18, 2017.[11]

In April 2015, Plaintiff was sent to SCI Camp Hill to undergo the DOC's diagnostic and classification program. *Id.* at 10. There, he was informed of the

---

[6] *Id.* at 9.
[7] *Id.*
[8] *Id.* at 9-10.
[9] *Id.* at 10.
[10] *Id.*
[11] *Id.* at 10, 53.

prescriptive programming he would need to complete prior to being considered for entry into the state's parole release program at his minimum sentencing date.[12] Plaintiff's required programming consisted of (1) batterers group, (2) sex offender program – low intensity ("SOP"), and (3) violence prevention.[13]

According to Plaintiff's DC-43 Integrated Correctional Plan, Plaintiff was recommended for the batterers group and the violence prevention group by non-party Imler on June 5, 2015.  *Id.* at 58.  Plaintiff was enrolled in those programs and completed them in 2016.[14]  Defendant McGee, who is the instructor of and in charge of enrolling inmates in SOP and is also in charge of tracking an inmate's minimum sentence date to ensure that they are program compliant, recommended Plaintiff for SOP on August 31, 2015.[15]  All sex offenders, including Plaintiff, must complete SOP prior to release on parole; Plaintiff alleges that no sex offender has been released on parole without first completing this programming.[16]

Plaintiff's difficulty in being permitted to complete his final program, SOP, apparently started when he was admitted into and permanently housed in the infirmary housing unit ("IHU") at SCI Mahanoy in April 2016 because he needs

---

[12]  *Id.*
[13]  *Id.* at 11.
[14]  *Id.*
[15]  *Id.*
[16]  *Id.* at 15.

supplemental oxygen.[17]  Although Plaintiff needs supplemental oxygen at times, he is able to attend to his routine activities, including walking around, and, for long distances, using a wheelchair.[18]  Plaintiff leaves the IHU for recreation, the library, religious services, gym, concerts, and other activities.[19]  Plaintiff has medical clearance to travel outside the IHU to attend programs available to inmates housed in the general population.[20]  According to Plaintiff, he can be without supplemental oxygen for up to three hours at a time.[21]  The SOP meetings only last an hour and a half at a time, and Plaintiff could be transported to them in a wheelchair.[22]

On February 20, 2017, Plaintiff submitted an inmate request addressed to Defendant Gladfelter, Plaintiff's corrections counselor, asking about placement in SOP and whether he had had any disciplinary reports in his file that he did not know about.[23]  Plaintiff alleges that this request went unanswered.

On March 2, 2017, Plaintiff received a notice from the Board of Parole informing him that he would not be considered for parole because he had not completed SOP, as required.[24]  Plaintiff then submitted a request slip to Defendant

---

[17]  *Id.* at 14.  Although not alleged in the amended complaint, Plaintiff explains in his brief in opposition to the motion to dismiss that he suffers from chronic obstructive pulmonary disease and emphysema.
[18]  *Id.* at 14.
[19]  *Id.* at 15, 26-27, 49.
[20]  *Id.* at 16.
[21]  *Id.* at 14.
[22]  *Id.*
[23]  *Id.* at 16.
[24]  *Id.*

Kellner, his corrections unit manager, asking why he was not permitted to complete his final program, and again asking whether there were any disciplinary reports or misconduct reports in his file.[25] Defendant Kellner responded that no disciplinary reports were in his file, and asked Plaintiff what courses he needed to complete.[26]

On March 8, 2017, Plaintiff submitted a request slip to Defendant Superintendent Delbaso, the superintendent of SCI Mahanoy, asking why he was not permitted the opportunity to complete his final SOP programming course, asked to be provided in writing the reason for not being permitted to complete SOP, and inquired as to the status of any disciplinary reports in his file.[27] Plaintiff received a response to this request from Defendant Mason, a deputy superintendent at SCI Mahanoy, who informed Plaintiff that he needed to follow up with his unit team.[28] Plaintiff then sent a written request to Defendant Kellner advising him that he is required to complete SOP, that he has been waiting to be enrolled in it, and thanking Defendant Kellner for his consideration in enrolling him.[29] Defendant Kellner replied that Plaintiff would need to contact Defendant McGee about placement in that program. *Id.*

---

[25] *Id.* at 16-17.
[26] *Id.* at 17.
[27] *Id.*
[28] *Id.* at 17-18.
[29] *Id.* at 18.

On March 19, 2017, Plaintiff submitted a written request to Defendant McGee explaining that he has been housed in the IHU since 2016, that he is required to complete SOP before he can be considered for parole, and asked why he has not been offered enrolled in the program and would she please enroll him.[30] In addition, Plaintiff asked that if he was being denied entry into SOP, would she please provide the reason in writing.[31]

While awaiting Defendant McGee's reply, Plaintiff submitted a request to Defendant Delbaso informing her that he had been notified by the Parole Board that he would not be considered for parole until he completed SOP and advising that he had sent a request to be enrolled in the program to Defendant McGee.[32] Defendant Cronauer, the deputy superintendent for facility management, responded to this request on March 24, 2017, advising Plaintiff to be patient, that Defendant McGee is likely busy, and that Plaintiff must be program compliant prior to parole.[33]

Defendant McGee responded to Plaintiff's request on March 27, 2017, informing him that he is on the waiting list and that he would be notified when a new group will start for Plaintiff to participate in.[34]

---

[30] *Id.* at 18-19.
[31] *Id.* at 19.
[32] *Id.*
[33] *Id.*
[34] *Id.*

Also on that day, Plaintiff submitted another request to Defendant Mason in which he states,

> In my request dated 03-08-17[,] I requested the institution's stance on not making available to me entry into my required [SOP], thus delaying my parole determination[,] . . . I am aware I must be compliant and also aware being housed in the Infirmary I am not considered for placement to my required courses by the institution. I have followed DOC rules in submitting my request to the appropriate staff and my request[s] are returned to me with twisted and convoluted replies which never address the real issue and never reach the named addressee. In closing I feel due process is non-existent.[35]

Defendant Mason replied that if Plaintiff can be medically cleaned to attend a program, "we can work something out."[36] This allegation is the first time that Plaintiff suggests that he was refused entry into the required sex offender program because he was housed in the IHU. It is unclear how and when Plaintiff obtained this information.

On April 3, 2017, Plaintiff submitted a written request to Defendant McGee asking whether the SOP had been offered to him since April 2016, when Plaintiff was placed in the IHU.[37] Defendant McGee responded that Plaintiff would be in the next SOP group offered.[38]

On April 12, 2017, Plaintiff submitted a written request to Defendant Gladfelter, his counselor, explaining how he was prevented from being considered

---

[35]  *Id.* at 20.
[36]  *Id.*
[37]  *Id.*
[38]  *Id.*

8

for parole until he completes his last required program, and said that he believed that SOP had been offered to him during the past year but, due to being housed in the IHU, he was barred from SOP enrollment.[39]  Plaintiff requested a reason for why he was passed over for SOP and asked when he would be enrolled in SOP.[40]  Plaintiff did not receive a response.

On May 8, 2017, Plaintiff submitted another written request to Defendant Mason, copying some of the other defendants, requesting an explanation for why he had been passed over for his final prescribed program, SOP, which has denied him the right of being seen by the Parole Board.[41]  He also explained that the prison must make the programs accessible to him through a reasonable accommodation as required by the Rehabilitation Act and the Americans with Disabilities Act.[42]  Plaintiff stated it is his belief that he was passed over for entry to this course due to being housed in the infirmary.[43]

Plaintiff received three responses to his request.  Defendant Mason replied, "Who said you were 'passed over?'  What program?"[44]  Defendant Kellner replied, "I do not control groups.  I suggest you contact Ms. McGee about the group.  You

---

[39]  *Id.* at 20-21.
[40]  *Id.* at 21.
[41]  *Id.*
[42]  *Id.* at 21-22.
[43]  *Id.*
[44]  *Id.* at 22.

are still on the waiting list to attend the group."[45]  Defendant Cronauer replied, "You are currently on the waiting list for SOP low intensity.  Please be patient."[46] Defendant Mason then sent a second reply, stating "You have not been passed over. Your name appears on the wait list and you will be notified as to when the next group starts which is anticipated for June [2017]."[47]

After Plaintiff was apparently not placed in that next group, Plaintiff filed an inmate grievance, No. 686639, in July 2017, grieving that:

> (1) he was in receipt of a memo from the PBPP warning him that he would not be considered for parole unless and until he completed the SOP; (2) through several Request Slips he was told to be patient; (3) this Request Slip situation has continued for four (4) months; (4) he cannot help but surmise that this SOP course was not offered to him during the 2016 calendar year either because he was housed in the Infirmary or because of the nature of his offense; (5) he was being singled out as an individual with a sex offense; (6) he was being singled out for discrimination regarding admittance into the SOP; and (7) he felt that by not having a parole consideration hearing before the PBPP, SCI-MAH has circumvented his opportunity to rejoin family and society.[48]

Plaintiff alleges that Defendant Hinman, a corrections grievance coordinator, was responsible for processing the grievances, assigning docket numbers to them, and appointing a staff member to respond to the grievance.[49]

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 23.
[49] *Id.* at 7.

As to Grievance No. 686639, Plaintiff received a response from Defendant

MacKnight, a grievance officer, who replied that:

> On 7/12/17 you filed a grievance stating that you are ineligible for
> parole due to your inability to start sex offender treatment . . . . I have
> reviewed the matter. As you note in your grievance, you have been told
> to be patient while staff make arrangements for you to be enrolled in
> sex offender programming. Your case is unique since you have been
> housed in the infirmary since May 2016. I spoke with Ms. McGee and
> you will be receiving an invitation for her group in the near future and
> arrangement have been made to have you attend despite being house in
> the infirmary. This grievance is denied.[50]

Plaintiff appealed this response to Defendant Delbaso, who replied that Plaintiff

should be patient while arrangements were being made for him to attend the SOP

program and denied the appeal.[51]

Plaintiff appealed that denial to Defendant Varner, the DOC's chief grievance

officer, arguing

> (1) that he has now exceeded the sentencing court's minimum sentence;
> (2) was denied the right to be considered for parole by the PBPP; (3)
> that parole consideration was an impossibility due to him not
> completing the SOP course; (4) that the SOP course was intentionally
> withheld from him for no other reason but to circumvent the sentencing
> court's minimum sentence date; (5) that he was willing, ready and able
> to complete the SOP course at the earliest possible time or since June
> 2016; (6) that he was told to be patient, that his case is unique because
> of being housed in the Infirmary; (7) that under the Rehabilitation Act
> and the Americans with Disabilities Act prisons must make their
> programs available to prisoners with disabilities by providing
> reasonable accommodations to attend prison programs; (8) that
> irrational distinctions in access to programs may be a violation of the

---

[50] *Id.* at 23-24.
[51] *Id.* at 4-25.

Equal Protection Clause of the Constitution; (9) that actions that make prisoners ineligible for parole have been held to deprive them of a liberty interest; and (10) the remedy he requested (a) place him in an accelerated program and allow him to complete it [before the expiration of his minimum sentence date]; and (b) offer Smith a program equally taught on the outside.[52]

Plaintiff received a response from Defendant Moore, an assistant of Defendant Varner at the DOC, on behalf of Defendant Varner:

This office is in receipt of your appeal and has reviewed all applicable documents. In your grievance and appeals, you continue to claim that you were not eligible for parole because you had not completed SOP. You assert your belief that this has been a tactic of discrimination due to your offense. You seek to be offered SOP at an accelerated rate. A review of the records reflects that there is nothing further to add to the responses you have already received. There is no evidence of discrimination. You have been in the infirmary and efforts are being made to have you attend group in the near future. Be advised that the [Parole] Board makes the final decision whether or not to parole an offender or to place him/her on the docket. Your continued patience is appreciated. Your appeal and any requested relief is denied.[53]

According to the exhibits attached to the Amended Complaint, Plaintiff was finally able to complete the SOP program on September 4, 2018.[54]

As a result of Plaintiff's efforts to seek enrollment in SOP, he alleges that he has been retaliated against by unnamed DOC or prison staff members. The actions that constitute retaliation include his transfer to SCI Waymart, which has less desirable living conditions than SCI Mahanoy, the removal of Plaintiff from his

---

[52] *Id.* at 25-26.
[53] *Id.* at 26.
[54] *Id.* at 57.

personal property once he arrived at SCI Waymart, the prevention of Plaintiff from maintaining duplicates of his documents at SCI Waymart, the confiscation of some of Plaintiff's property at SCI Waymart, the falsification of a property inventory sheet, and the packing of his property at SCI Mahanoy outside his presence.[55]  Most of these issues occurred at SCI Waymart, aside from the packing of Plaintiff's personal property.  However, Plaintiff makes no allegations connecting any of the defendants to the alleged actions of retaliation.

Although not alleged in the amended complaint, Plaintiff was finally granted parole on March 19, 2019—approximately a year and a half past his minimum sentence date of August 18, 2017.[56]  Plaintiff has twice been directed to pack his belongings because he would be released to a halfway house.[57]  Each time, however, his transfer was cancelled.[58]  Plaintiff remains incarcerated at SCI Waymart according to the DOC's inmate locator.  Plaintiff's maximum sentence term will expire on August 18, 2020.[59]

## II.     STANDARD OF REVIEW

Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must set forth a claim for relief which contains a short and plain statement of the claim

---

[55]  *Id.* at 30-34.
[56]  ECF No. 53.
[57]  *Id.*
[58]  *See id.*
[59]  ECF No. 29 at 53.

showing that the pleader is entitled to relief; the complaint must provide the defendant with fair notice of the claim.[60] When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations.[61] The issue in a motion to dismiss is whether the plaintiff should be entitled to offer evidence to support the claim, not whether the plaintiff will ultimately prevail.[62]

The onus is on the plaintiff to provide a well-drafted complaint that alleges factual support for its claims. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[63] The court need not accept unsupported inferences,[64] nor legal conclusions cast as factual allegations.[65] Legal conclusions without factual support are not entitled to the assumption of truth.[66]

---

[60] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[61] *See Erickson v. Pardus*, 551 U.S. 89, 94 (per curiam).

[62] *See Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (the Rule 8 pleading standard "'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."); *Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[63] *Twombly*, 550 U.S. at 555 (alteration in original and internal citations omitted).

[64] *Cal. Pub. Employees Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

[65] *Twombly*, 550 U.S. at 556.

[66] *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not" satisfy the requirements of Rule 8).

Once the court winnows the conclusory allegations from those allegations supported by fact, which it accepts as true, the court must engage in a common sense review of the claim to determine whether it is plausible. This is a context-specific task, for which the court should be guided by its judicial experience. The court must dismiss the complaint if it fails to allege enough facts "to state a claim for relief that is plausible on its face."[67] A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[68] The complaint that shows that the pleader is entitled to relief—or put another way, facially plausible—will survive a Rule 12(b)(6) motion.[69]

## III. DISCUSSION

### A. Americans with Disabilities Act Claim

The individual Defendants have moved to be dismissed from Plaintiff's ADA claim because they cannot be sued thereunder.[70] The Court agrees and will dismiss the individual Defendants from the ADA claim.

Title II of the ADA provides that:

Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

---

[67] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).
[68] *Iqbal*, 556 U.S. at 678.
[69] *See* Fed. R. Civ. P. 8(a)(2); *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).
[70] Defendant Pennsylvania Department of Corrections has not moved to dismiss Plaintiff's ADA claim.

activities of a public entity, or be subjected to discrimination by any such entity.[71]

A public entity is defined as:

> (a) any State or local government;

> (b) any department, agency, special purpose district, or other instrumentality of a State or States or local government.

State employees in their individual capacities are not public entities and, therefore, are not amenable to suit under Title II of the ADA.[72]  The Court will thus dismiss the ADA claim against Defendants Delbaso, Mason, Cronauer, Kellner, Gladfelter, McGee, Hinman, Varner, MacKnight, and Moore.

## B.    Constitutional Claims Pursuant to § 1983

Plaintiff has brought his constitutional claims against Defendants pursuant to 42 U.S.C. § 1983, which provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

"To establish a claim under 42 U.S.C. § 1983, [a plaintiff] must demonstrate a violation of a right secured by the Constitution and the laws of the United States

---

[71]   42 U.S.C. § 12132.

[72]   *See Koslow v. Pennsylvania*, 302 F.3d 161, 179 (3rd Cir. 2002).

[and] that the alleged deprivation was committed by a person acting under color of state law."[73]

The Court must dismiss the § 1983 claims alleged against individual Defendants Delbaso, Mason, Cronauer, Kellner, Gladfelter, Hinman, Varner, MacKnight, and Moore because they were not personally involved in the wrongful actions alleged by Plaintiff.

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[74]  Further, supervisory liability cannot be imposed under § 1983 by *respondeat superior*.[75] "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[76]  A plaintiff must show that an official's conduct caused the deprivation of a federally protected right.[77] In addition, a prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or an official grievance

---

[73]  *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993).

[74]  *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007).  *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[75]  *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993).

[76]  *Iqbal*, 556 U.S. at 677.

[77]  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.[78]

Here, the only allegations against Defendants Delbaso, Mason, Cronauer, Kellner, Gladfelter, Hinman, Varner, MacKnight, and Moore are based on receiving, processing, and/or responding to an inmate request or grievance. Their responses demonstrate that none of these defendants had any responsibility for or personal involvement in the decision whether to enroll Plaintiff in SOP; in many cases, the responses directed Plaintiff to contact Defendant McGee, who was responsible for enrolling inmates in and instructing SOP. Notably, a supervisory official has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the violation of constitutional rights.[79] Because these Defendants were not personally involved in the decision not to—or when to—enroll Plaintiff in SOP, Plaintiff cannot state a claim for relief pursuant to § 1983 against them. They must be dismissed.

---

[78] *See Rode*, 845 F.2d at 1207-08 (concluding that review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (prison officials cannot be held liable solely based on their failure to take corrective action when grievances or investigations were referred to them); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dep't of Corrs.*, No. 06-cv-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

[79] *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).

As to Defendant DOC, it is well-settled that neither a state nor its agencies are considered a "person" as that term is defined under § 1983 and, therefore, are not subject to a § 1983 suit.[80]  Consequently, Plaintiff's § 1983 claims against Defendant Department of Corrections are barred, as it is not a person within the meaning of 42 U.S.C. § 1983.[81]  Moreover, Defendant DOC would be entitled to Eleventh Amendment immunity.[82]  Because Plaintiff has failed to state a § 1983 claim against Defendant DOC upon which relief may be granted and because it would be immune from such a claim, the Court will dismiss the § 1983 claims here.

Defendant McGee concedes that Plaintiff can state an equal protection claim against her, but argues that he cannot state a due process, Eighth Amendment, or retaliation claim against her.

First, turning to Plaintiff's procedural due process claim, in analyzing such a claim,

> [T]he first step is to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment."  "Once we determine that the interest asserted is protected by the Due Process Clause, the question then becomes what process is due to protect it."  The underlying liberty interest can be

---

[80]  *Hafer v. Melo*, 502 U.S. 21, 25-27, (1991).

[81]  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that a state may not be sued in federal court pursuant to § 1983, and is not a "person" for purposes of that provision).

[82]  *See Lavia v. Pa. Dep't of Corrs.*, 224 F.3d 190, 195 (3d Cir. 2000) (finding that the Pennsylvania Department of Corrections "shares in the Commonwealth's Eleventh Amendment immunity").

derived directly from the Due Process Clause or from the state's statutory scheme.[83]

Although a Pennsylvania state prisoner has no liberty interest in being granted parole that would invoke due process protection,[84] the United States Court of Appeals for the Third Circuit has recognized that under Pennsylvania law, a prisoner has the right to apply for parole and to have that application fairly considered.[85]  Relevant here, a Pennsylvania state prisoner convicted of a sex offense is statutorily barred from applying for parole until the prisoner has completed SOP.[86]  Procedural due process requires the "opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Here, accepting Plaintiff's allegations as true and in the light most favorable to him, Plaintiff was frustrated from his right to apply for parole by virtue of not being enrolled in SOP.  In being denied that right, however, Plaintiff has alleged that he was given both notice and an opportunity to be heard regarding this application for parole.  Specifically, Plaintiff was notified that he would not be considered for parole until he had completed SOP, and Plaintiff availed himself of inmate requests and the more formal grievance procedure in an effort to become enrolled in the program.  It is not clear—and neither party has articulated—what other procedural

---

[83]   *Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations omitted).
[84]   *See Thorpe v. Grillo*, 80 F. App'x 215, 219 (3d Cir. 2003)
[85]   *See Newman v. Beard*, 617 F.3d 775 (3d Cir. 2010) (citing cases).
[86]   42 Pa. C.S. § 9718.1(b)(ii).

processes were due to Plaintiff. Therefore, the Court will dismiss Plaintiff's procedural due process claim against Defendant McGee. Such dismissal is without prejudice to Plaintiff's right to allege any further process that was due to him.

Next, as to the substantive due process claim against Defendant McGee:

> "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" Conduct can violate substantive due process if it "'shocks the conscience,' which encompasses 'only the most egregious official conduct.'" The conduct must be "intended to injure in some way unjustifiable by any government interest."[87]

Defendants argue, in the context of all individual defendants, that the analysis under substantive due process is akin to an equal protection analysis, which poses the inquiry of whether there is a rational basis for the challenged policy, citing *Cospito v. Heckler*.[88]

The Court has already dismissed the other individual defendants due to their lack of personal involvement, and thus need now only consider whether Plaintiff can state a substantive due process claim against Defendant McGee. Notably, Defendant McGee has already conceded that Plaintiff can allege an equal protection claim against her; it would stand to reason under this Defendant's own argument that Plaintiff can also state a substantive due process claim against her.

---

[87] *Newman*, 617 F.3d at 782 (internal citations omitted) (considering whether parole board's denial of parole to Pennsylvania state prisoner who refused to participate in SOP violated substantive and procedural due process).

[88] 742 F.2d 72, 84 (3d Cir. 1984).

At this early stage of the litigation, the Court is limited to considering Plaintiff's allegations pled in the amended complaint, which it must take as true and, as Plaintiff is proceeding *pro se*, construe them liberally in his favor. Plaintiff has alleged a policy of not permitting inmates housed in the IHU from participating in SOP, a policy to which Defendant McGee allegedly adhered. From the facts pled, it is plausible that a reasonable person could find that such action and policy was arbitrary, and that such an arbitrary action and policy that results in preventing prisoners from being considered for parole at their minimum sentence date, leading to them remaining imprisoned beyond that date, shocks the conscience. Put another way, a reasonable person could find that the decision not to enroll Plaintiff in SOP simply because he was housed in the IHU and knowing that it would effectively prevent him from parole consideration was "unjustifiable by any government interest."

There are myriad legitimate reasons why Plaintiff may not have been enrolled in SOP—perhaps Plaintiff was simply at the bottom of the waiting list or he was not cleared by doctors to attend—however, the Court will not have the benefit of knowing these reasons under after discovery. In this circumstance, the Court is simply unable to assess the full scope of the decision making that prevented Plaintiff from being enrolled in SOP, and without that context it cannot evaluate the legal

sufficiency of his substantive due process claim. As such, the motion is denied without prejudice as to the substantive due process claim against Defendant McGee.

As to the Eighth Amendment claim against Defendant McGee, the Court will also deny the motion. The Third Circuit has held that imprisonment beyond one's term—even a few days—may constitute cruel and unusual punishment under the Eighth Amendment.[89] In evaluating such a claim, a prisoner must show that the defendant acted with deliberate indifference, meaning that the defendant disregarded a substantive risk of substantial harm to the plaintiff.[90] The Court can find no case law analogous to Plaintiff's situation in the context of the Eighth Amendment. The Third Circuit has, however, held that a Pennsylvania state prisoner such as Plaintiff has the right to apply for and be fairly considered for parole. Being denied that opportunity—the opportunity to potentially be released on parole—through no fault of one's own would surely constitute a substantial harm.

The question then remains whether Defendant McGee acted with deliberate indifference in acting to deny Plaintiff's right to be considered for parole. Mindful of the limited legal guidance available to the Court to assess such a claim as well as the early stage of the proceedings and liberal pleading standards for *pro se* litigants, the Court finds that Plaintiff has pled plausible deliberate indifference by Defendant

---

[89] *Granberry v. Chairman of Pa. Bd. of Prob. & Parole*, 396 F. App'x 877, 880 (3d Cir. 2010).
[90] *Id.*

McGee.  Here, Plaintiff has alleged that (1) Defendant McGee knew that Plaintiff would not be considered for parole until he had completed SOP, (2) Plaintiff's first parole eligibility date was rapidly approaching in August 2017, and (3) Defendant McGee continued to pass Plaintiff over for participation in SOP.  For example, Plaintiff alleges that Defendant McGee advised that he would be placed in the next SOP program, which was scheduled for June 2017, but he was not ultimately placed in that class.  Like the substantive due process claim, discovery may yield reasons that would demonstrate that Defendant McGee did not act with deliberate indifference, however at this stage, the Court cannot make such a determination.  As such, the motion will be denied as to the Eighth Amendment claim against Defendant McGee.

Finally, as to the retaliation claim alleged against Defendant McGee, in order to state a claim for retaliation, Plaintiff must show that 1) he engaged in some type of constitutionally protected conduct, 2) he was the subject of an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and, 3) there was a causal relationship between the two.[91]

---

[91]  *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (quoting *Allah v. Seiverling*, 229 F.3d 220, 225 (3rd Cir. 2000)).

Here, none of the retaliatory conduct alleged by Plaintiff in the amended complaint involves Defendant McGee, nor is there any allegation that she somehow directed or caused it to occur. Indeed, much of the conduct alleged occurred at SCI Waymart, and there is no allegation that Defendant McGee was employed at SCI Waymart. Because there is no allegation that Defendant McGee was personally involved in the alleged retaliatory conduct, the Court will grant the motion as to the retaliation claim against Defendant McGee.

## C. Conspiracy Claim Pursuant to § 1985

Defendants also argue that Plaintiff has failed to adequately allege a conspiracy, and therefore, that claim must be dismissed. Section 1985(3) provides a cause of action when

> [T]wo or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.[92]

To state a claim under § 1985(3), "a plaintiff must allege: (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United

---

[92] 42 U.S.C. § 1985(3).

States."[93]  To prevail on the first element of a conspiracy claim, a plaintiff must demonstrate through specific facts that the defendants "reached an understanding" to deprive them of their rights.[94]  It is insufficient for a plaintiff to make broad, conclusory allegations of such a conspiracy, or to show merely that the Defendants had a common goal or acted in concert.[95]  Rather, a plaintiff must make specific factual allegations of combination, agreement, or understanding among all or between any of the defendants to plot, plan, or conspire to carry out the alleged chain of events.[96]

Plaintiff has not pled sufficient, specific factual allegations to establish the elements of a conspiracy.  The allegations instead demonstrate that each Defendant acted individually in only responding to inmate requests or grievances and, when appropriate, referred Plaintiff to Defendant McGee, who was in charge of the SOP program.  In the context of Defendant McGee, the allegations only demonstrate that she alone determined whether to enroll Plaintiff in SOP.  Because Plaintiff cannot allege a conspiracy on behalf of the Defendants, this claim must be dismissed.[97]

---

[93]  *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997) (citing *United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983); *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

[94]  *See Chicarelli v. Plymouth Garden Apartments*, 551 F. Supp. 532, 539 (E.D. Pa. 1982).

[95]  *Id.*

[96]  *See Lake*, 112 F.3d at 685; *Hammond v. Creative Fin. Planning*, 800 F. Supp. 1244, 1249 (E.D. Pa. 1992).

[97]  To the extent that Plaintiff intended to bring a separate conspiracy claim pursuant to § 1983, the Court would dismiss it for the same reasons as the § 1985 claim:  the failure to plead facts

### D. Class Action

In order to proceed as a class action, Plaintiff must show that the requirements of Federal Rule of Civil Procedure 23(a), governing class action lawsuits, have been met. Rule 23(a) provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

It is well established, however, that a prisoner proceeding *pro se*, is unable to satisfy the fourth element of a class action suit.[98]  Because Plaintiff is unable to adequately represent the interests of the putative class, he cannot maintain this suit as a class action under Federal Rule of Civil Procedure 23(a).

---

to support the elements of conspiracy. *See Capogrosso v. The Supreme Court of New Jersey*, 588 F. 3d 180, 184-85 (3d Cir. 2009).

[98] *See Awala v. New Jersey Dep't of Corrs.*, 227 F. App'x 133, 134 (3d Cir. 2007) (affirming district court where the "District Court dismissed [plaintiff's] complaint and amended complaint . . . concluding that as a pro se prisoner without formal training in the law . . . [plaintiff] would not be able to adequately represent the interests of the class and maintain the suit as a class action"); *Bricker v. McVey*, No. 08-cv-01033, 2009 WL 960383 at *8 n.11 (M.D. Pa. April 7, 2009) ("When confronting such a request from a prisoner, courts have consistently held that a prisoner acting pro se 'is inadequate to represent the interests of his fellow inmates in a class action.'") (quoting *Carter v. Taylor*, 540 F. Supp. 2d 522, 527 (D. Del. 2008)).

### E.    Compensatory Damages

Defendants have also moved to dismiss the claims for compensatory damages brought pursuant to the ADA and § 1983 because Plaintiff has not pled the existence of a physical injury in the amended complaint.

The Prisoner Litigation Reform Act provides, in pertinent part:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18).[99]

A prisoner is required to plead a "less-than-significant-but-more-than-*de minimis* physical injury as a predicate to allegations of emotional injury" in order to recover compensatory damages for mental or emotional injury.[100]

Because Plaintiff has failed to allege any physical injury in the amended complaint, the Court will dismiss without prejudice the claims for compensatory damages.[101]   This dismissal is without prejudice to Plaintiff's right to amend his pleadings should he be able to allege a sufficient physical injury.

---

[99]   42 U.S.C. § 1997e(e).

[100]   *Mitchell v. Horn*, 318 F.3d 523, 536 (3d Cir. 2003).

[101]   *Id.* at 533-36 (holding claim for compensatory damages appropriately dismissible in light of PLRA's physical injury requirement when plaintiff has failed to allege a physical injury; leave to amend physical injury appropriate).  The Court notes that the prohibition on compensatory damages does not affect Plaintiff's right to recover nominal and punitive damages, nor does not impact the ability to seek declaratory and injunctive relief should he succeed in proving his claims.  *See id.*

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant in part the motion to dismiss.

An appropriate Order follows.

BY THE COURT:


_s/ Matthew W. Brann_
Matthew W. Brann
United States District Judge